# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

FILED

2006 AUG 15  A 10: 28

CLERK OF DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

| | | |
|---|---|---|
| BERNARDO HERNANDEZ GONZALEZ, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. SA-06-CA-354 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

Bernardo Hernandez Gonzalez ("Gonzalez") was properly convicted of murder. He now seeks habeas corpus relief in this Court pursuant to 28 U.S.C. §§ 2241, 2254. Gonzalez has failed to establish that he is entitled to habeas corpus relief, so his federal habeas corpus petition must be dismissed with prejudice.

## JURISDICTION

The court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241, 2254 (West 2004). Jurisdiction is proper in either the district where Gonzalez is in custody or the district in which the state court convicted and sentenced him. *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000) (quoting § 2241(d)). In this case, jurisdiction is based on Gonzalez's conviction in Bexar County, which is within the Western District of Texas.

## DENIAL

Respondent Nathaniel Quarterman ("the Director") denies all of Gonzalez's assertions of fact, except those supported by the record or specifically admitted herein.

## STATEMENT OF THE CASE

The Director has lawful custody of Gonzalez pursuant to a judgment and sentence of the 175th District Court of Bexar County, Texas, in cause number 1993CR0197, styled *The State of*

*Texas v. Bernardo H. Gonzalez.* Tr[1] 98. A jury found Gonzalez guilty of murder and assessed an eighty-year sentence on January 12, 1994. Tr 98. The judgment was affirmed on appeal. *Gonzalez v. State*, 04-01-00806-CR (Tex. App. — San Antonio, opinion delivered May 28, 2003). The Texas Court of Criminal Appeals refused Gonzalez's petition for discretionary review on October 15, 2003. *Gonzalez v. State*, PDR No. 1010-03. Gonzalez filed a state writ application challenging this conviction on June 30, 2004. SHCTr[2] at 1, 212. Appellate counsel filed an affidavit responding to the application. SHCTr at 250. The convicting court made findings and conclusions. SHCTr at 258-71. The Court of Criminal Appeals denied the application without written order on March 22, 2006. Gonzalez's federal writ petition appears to have been filed within the statute of limitations, and his claims do not appear to barred by abuse of the writ.

## STATE COURT RECORDS

Gonzalez's available state court records have previously been forwarded to this Court.

## PETITIONER'S ALLEGATIONS

The Director understands Gonzalez's allegations to be as follows:

1.      Trial court denied request for continuance.

2.      Presentence investigation report not introduced into evidence.

3.      Trial court excluded probation from the jury charge.

4.      Trial court denied motion to remove jury.

5.      Trial court allowed false evidence to be introduced.

6.      Ineffective assistance of trial counsel because:

      a.      counsel failed to impeach Sylvia Meledez's statement and testimony at trial;

---

[1] "Tr" refers to the transcript of papers filed in the trial court, appearing in the clerk's record, preceded by the volume number and followed by the page number.

[2] "SHCTr" refers to the state habeas corpus transcript of papers in *Ex parte Gonzalez*, No. 60,890-02.

b.     counsel was not prepared;.

c.     counsel did not locate Rachel Rivera and Sylvia Meledez;

d.     counsel did not subpoena Rachel Rivera and Joe Mata;

e.     counsel did not raise self-defense;

f.     counsel did not preserve an issue regarding accidental shooting;

g.     counsel did not properly file a motion for continuance;

7.   Trial court denied request for jury charge on lesser included offenses.

8    Prosecutorial misconduct - prosecutor relied on perjured testimony and false evidence.

9.   Violation of Fifth Amendment - admission of statement into evidence.

10.   Improper jury argument by prosecutor.

11.   Prosecutor failed to disclose exculpatory evidence.

a.     police report; statements of witnesses; toxicology report; autopsy report; G.S.R. test; firearms report; clerk's record; district attorney's file;

b.     misled jury about Gonzalez's eligibility for probation;

c.     failed to introduce presentence investigation report into evidence.

12.   Lack of jurisdiction - indictment.

13.   Convicted in absentia.

14.   Ineffective assistance of appellate counsel because.

a.     counsel failed to file notice of appeal;

b.     counsel failed to supplement the brief;

c.     counsel failed to provide Gonzalez with a copy of the complete record;

d.     counsel failed to provide Gonzalez with a copy of the State's brief;

    e.    counsel failed to include witnesses' statements.

    f.    counsel failed to raise insufficiency of the evidence;

15.    Denied access to court - motion for rehearing.

## STATEMENT OF FACTS

According to the State's appellate brief, three of the State's witnesses testified about the facts of the offense. Brief for the State at 2. The victim, Alex Perez, and friends were sitting in the parking lot of Scorpio's lounge. 3 SF[3] 21. Some time between 1:00 a.m and 2:00 a.m., Gonzalez left the lounge and began walking to his car in the parking lot. 3 SF 24, 71-74, 136. Gonzalez deactivated his car alarm, and Perez and his friends laughed because they thought his car was too old to need an alarm. 3 SF 24, 74-75, 137-38. Gonzalez reached into his car and removed something. 3 SF 24, 75-76, 139. Gonzalez walked toward Perez's group, with a gun. 3 SF 26, 76-77, 141-145. Gonzalez pointed the gun at Perez. 3 SF 26, 78-79, 145. Sylvia Meledez, the sister of one of Perez's group, hit Gonzalez's arm, tried to pull down his arm, or pushed his hand. 3 SF 26, 80, 111, 148. Gonzalez shoved aside Meledez, aimed the gun at Perez, and fired once, hitting Perez in the chest. 3 SF 26-30, 61, 81-82, 148-50. During the booking procedure, Gonzalez voluntarily said, "Machismo got the best of me." 3 SF 204, 205.

## STANDARD OF REVIEW - AEDPA

Gonzalez's petition is subject to review under the amendments to the federal habeas corpus statutes embodied in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C.A. § 2254; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding the AEDPA only applies to those noncapital habeas corpus cases filed after its effective date of April 24, 1996).

The provisions of Section 2254(d) set forth a "highly deferential standard for evaluating state-court rulings, . . . which demands that state court decisions be given the benefit of the doubt."

---

[3] "SF" refers to the transcription of the trial proceedings, preceded by the volume number and followed by the page number.

*Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted). The petitioner may not obtain federal habeas corpus relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Price v. Vincent*, 123 S. Ct. 1848 (2003); *see also Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2)). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

The AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Terry Williams v. Taylor*, 529 U.S. 362, 404 (2000). In review of a state prisoner's federal habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption by *clear and convincing evidence*." 28 U.S.C. §2254(e)(1) (emphasis added); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.

A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* To be unreasonable, the state decision must be more than merely incorrect or erroneous. *See Lockyer v. Andrade*, 123 S. Ct. 1166, 1174 (2003). Rather, the state court's

5

application of clearly established law must be "objectively unreasonable." *Id.* Stated another way, a reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001); *see Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) (the standard for federal habeas relief is one of objective reasonableness); *see also Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*) (holding that a federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence"). Under this standard, a federal habeas corpus court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers").

In review of a state prisoner's federal habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Jackson v. Johnson,* 150 F.3d 520, 524 (5th Cir. 1998). Moreover, where the petitioner

> has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
> (A) the claim relies on
>
>> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable

factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2); *Murphy v. Johnson,* 205 F.3d 809, 815 (5th Cir. 2000).

Thus, in the state courts a petitioner "must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met." *Williams,* 529 U.S. at 437.

## DENIAL OF REQUEST FOR CONTINUANCE

Gonzalez contends the trial court erred in denying counsel's request for a continuance at the beginning of trial. Gonzalez has not established he is entitled to relief on this claim.

"When a denial of a continuance is the basis for a habeas petition, the petitioner must show an abuse of discretion that was so arbitrary and fundamentally unfair as to violate the constitutional principles of due process. Accordingly, to prevail, a petition must show that the failure to grant a continuance harmed the defense." *Newton v. Dretke*, 371 F.3d 250, 255 (5th Cir. 2004) (citation omitted); *Schrader v. Whitley*, 904 F.2d 282, 288 (5th Cir. 1990) ("If abuse of discretion is demonstrated [concerning the denial of a motion for continuance], the [habeas] petitioner must sustain the burden common to due process claims that 'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'").

Here, the trial court observed that the case was on its fourth setting and that the investigator had been approved approximately six months earlier. 2 SF 7. Furthermore, Gonzalez has not alleged, much less demonstrated, how he was harmed by the trial court's denial of the motion for continuance on the day of trial.

The state court's denial of the writ application was an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). Therefore, under the AEDPA, Gonzalez must show that this decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Gonzalez has not done so.

### PRESENTENCE INVESTIGATION REPORT NOT INTRODUCED

Gonzalez contends a presentence investigation report was not introduced at trial. Gonzalez did not raise this issue in his state writ application or in his petition for discretionary review, so it is unexhausted and procedurally barred.

Before filing his federal writ petition, Gonzalez was required to present the same legal claims and factual allegations to the Texas courts, and thereby exhaust available state court remedies. A petitioner must first provide the highest state court a fair opportunity to apply the controlling federal constitutional principles to those same legal claims and factual allegations and, if necessary, correct alleged deprivations of federal constitutional rights before a federal court will entertain the alleged errors. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 348 (1989); *Anderson v. Harless,* 459 U.S. 4, 6 (1982); *Martinez v. Johnson*, 255 F.3d 229, 238 (5th Cir. 2001) ("The law is well established that a state prisoner seeking to raise claims in a federal petition for habeas corpus ordinarily must first present those claims to the state court and must exhaust state remedies"). The exhaustion requirement of § 2254(b) "ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." *Duncan v. Walker*, 533 U.S. 167, 178-79 (2001) (citations omitted); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) ("Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.").

In order to satisfy the exhaustion requirement of 28 U.S.C. §2254(b), (c), a Texas prisoner must fairly, and properly, present his claims to the Court of Criminal Appeals by petition for discretionary review or state habeas review. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001);

*Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier,* 762 F.2d 429 (5th Cir. 1985).

Gonzalez did not raise this issue in his state writ application or in his petition for discretionary review. He only raised an issue about ineffective assistance of counsel for failure to introduce the PSI. Therefore, it is unexhausted.

Nevertheless, the exhaustion requirement "is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (citing *Castille v. Peoples*, 489 U.S. at 351). As the Supreme Court held in *Coleman v. Thompson*, though normally a state court must explicitly apply a procedural bar in order for review to be barred, that rule

> [d]oes not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims. *See Harris v. Reed*, 489 U.S. 255, 269-270 ... (1989) (O'Connor, J., concurring); *Teague v. Lane*, 489 U.S. 288, 297-298 ... (1989).

501 U.S. 722, 735 n.1 (1991); *see also Keeney v. Tamayo-Reyes,* 504 U.S. 1, 9-10 (1992) (holding that an unexhausted claim is defaulted on federal review if the claim would now be found procedurally barred by the state court).

The Fifth Circuit has consistently found unexhausted claims, which would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, procedurally barred. *See, e.g., Ogan v. Cockrell*, 297 F.3d 349, 358 n.6 (5th Cir. 2002); *Martinez v. Johnson*, 255 F.3d 229, 239 (5th Cir. 2001); *Fuller v. Johnson*, 158 F.3d 903, 906 (5th Cir. 1998) (Texas' abuse-of-the-writ doctrine is regularly and strictly applied); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (per curiam) (dismissal is independent and adequate state bar).

Here, Gonzalez's unexhausted claim is procedurally barred. If he now tried to return to state court to raise the allegations in a successive habeas application, the Court of Criminal Appeals would

refuse to review the merits based on the existence of an independent and adequate state procedural bar. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 § 4 (barring successive state habeas applications absent a showing of cause or actual innocence); *Martinez v. Johnson*, 255 F.3d at 239 (upholding Texas' rule as independent and adequate procedural bar).

Consequently, this claim is procedurally barred. Where a claim is procedurally barred or where a state court has explicitly relied on a procedural bar to deny relief, a state prisoner may not obtain federal habeas relief unless he can demonstrate cause for the default and actual prejudice attributable to the default, or that the federal court's failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. at 750; *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Martinez v. Johnson*, 255 F.3d at 239; *Little v. Johnson*, 162 F.3d 855, 859 (5th Cir. 1998) ("When the ground upon which the petitioner relies for habeas relief was not exhausted in state court and state procedural rules would bar subsequent presentation of the argument, this court may not consider the claim absent 'cause' and 'prejudice'....") (citing *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir. 1998)).

To establish cause, a habeas petitioner must ordinarily identify "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Carrier*, 477 U.S. at 492). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel." *McCleskey*, 499 U.S. at 494 (internal quotations omitted); *Cuevas v. Collins*, 932 F.2d 1078, 1082 (5th Cir. 1991). However, if an independent constitutional violation is to constitute cause, such as ineffective assistance of counsel, it must also be exhausted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Carrier*, 477 U.S. at 489. For an unexhausted violation to suffice for cause, a habeas petitioner must prove cause and prejudice for the unexhausted claim as well. *Carpenter*, 529 U.S. at 453.

If a petitioner fails to prove cause, then the federal reviewing court need not address the prejudice prong of the test. *See Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982). Moreover, the requisite showing of "prejudice" is significantly greater than that required to establish plain error. "The habeas petitioner must show 'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage infecting his entire trial with error of constitutional dimensions.'" *Carrier*, 477 U.S. at 493, (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

A miscarriage of justice in this context means that the petitioner is actually innocent of the crime of which he was convicted. *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Smith v. Dixon*, 14 F.3d 956, 974 (5th Cir. 1994). "Actual innocence means 'factual innocence and not mere legal insufficiency.'" *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). "To establish actual innocence, [the] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley, id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 328 (1995)).

> A substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.

*Schlup v. Delo*, 513 U.S. at 324 (internal citation omitted).

Here, Gonzalez has not shown cause and prejudice so as to excuse the procedural bar. Alternatively, this claim lacks merit.

Gonzalez has not shown he had a constitutional right to have a presentence investigation report introduced into evidence. A presentence investigation report in Texas is used only when the trial court assesses punishment. Tex. Code Crim. Proc. art. 42.12, § 9(a). Here, the jury assessed punishment. Moreover, the matters Gonzalez complains about could have been presented as punishment evidence. Apparently, counsel was going to have Gonzalez testify, until Gonzalez

absconded. SHCTr 250, 253.

## EXCLUSION OF PROBATION FROM JURY CHARGE

Gonzalez contends the trial court failed to instruct the jury on probation. Gonzalez does not identify any constitutional right that was violated. Thus, Gonzalez has not stated a proper ground for federal habeas corpus relief.

Moreover, although Gonzalez filed a sworn motion for probation, Tr 25, 4 SF 80, that alone was insufficient to prove Gonzalez's eligibility for probation. *See Tenery v. State*, 680 S.W.2d 629, 640 (Tex. App. — Corpus Christi 1984); *Green v. State*, 658 S.W.2d 303, 309 (Tex. App. — Houston [1st Dist.] 1983). Thus, absent evidence supporting Gonzalez's request for probation, the trial court did not err in failing to include probation in the jury charge.

Gonzalez has not shown that the state court's rejection of this claim was unreasonable.

## FAILURE TO REMOVE JURY

Gonzalez contends the trial court erred in denying his request to have the jury panel removed based on a statement a venireperson made in voir dire. 3 SF 3. The venireperson stated that because his sister-in-law was murdered the week before, he felt that the defendant was guilty just because it was a murder case. 2 SF 47-48. The comment made during the course of voir dire was not based on any knowledge about Gonzalez. It was simply an expression that the venireperson was inclined to vote guilty solely based on the type of crime. Although that demonstrated the venireperson's bias, it was not the type of comment that would taint the jury. In fact, when asked, no one else on the jury indicated they felt the same way as that veniremember. 2 SF 48.

Gonzalez has not shown that the state court's rejection of this claim was unreasonable.

## TRIAL COURT ALLOWED FALSE EVIDENCE

Gonzalez contends the trial court allowed false evidence to be introduced. He asserts that the bullet introduced into evidence was false evidence, based on counsel's objection to its chain of custody.

This claim does not raise an issue under the United States Constitution. "Federal habeas relief cannot be had 'absent the allegation by a petitioner that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (citing *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)). In federal habeas corpus actions, federal courts do not sit to review the mere admissibility of evidence under state law or errors under state law. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("[w]e have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States."); *Hill v. Johnson*, 210 F.3d 481, 491 (5th Cir. 2000); *Little v. Johnson,* 162 F.3d 855, 862 (5th Cir. 1998); *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992) ("errors of state law, including evidentiary errors, are not cognizable in habeas corpus"). Evidentiary rulings of a state court do not warrant federal habeas corpus relief unless the errors are so extreme that they constitute a denial of fundamental fairness under the Due Process Clause. *Little,* 162 F.3d at 862; *Derden*, 978 F.2d at 1458. Habeas relief is warranted only when an erroneous admission played a crucial, critical, and highly significant role in the trial. *Skillern v. Estelle,* 720 F.2d 839, 852 (5th Cir. 1983); *Bailey v. Procunier,* 744 F.2d 1166, 1168-69 (5th Cir. 1984). Gonzalez does not claim any such violation of the Due Process Clause.

Alternatively, any complaints about the chain of custody would go the weight of the evidence, rather than to its admissibility. Under state law, "as a general rule an object offered in evidence should not be rejected because it is not positively identified as the exact object that was connected with the crime." *See Hicks v. State,* 508 S.W.2d 400, 402 (Tex.Crim.App. 1974), (citing *Pryor v. State,* 449 S.W.2d 482 (Tex. Crim.App. 1969)). *See also Binyon v. State,* 545 S.W.2d 448, 452 (Tex.Crim.App. 1976). In *Binyon* the Court of Criminal Appeals held that "the lack of positive identification affects the weight of the object as evidence, rather than its admissibility." *Id.*; *see also United States v. Casto*, 889 F.2d 562, 568-69 (5th Cir. 1989).

13

Gonzalez has not shown that the state court's rejection of this claim was unreasonable.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Gonzalez raises several claims of ineffective assistance of counsel. By the time Gonzalez filed his state writ application, which was years after his conviction, due to his having absconded, trial counsel was deceased. SHCTr 252, 262.

The Supreme Court, in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), established a two-prong standard for ineffective assistance of counsel claims. First, petitioner must demonstrate that his counsel's performance was deficient and, second, that the deficient performance prejudiced the defense. To show that the performance was deficient, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. This "performance inquiry" is to be made applying a reasonableness standard; i.e., was counsel's assistance reasonable under all circumstances, making the assessment, not in hindsight, but evaluating the conduct from counsel's perspective at the time of the conduct. *Id*. at 688-89. Thus, the reviewing court is to be highly deferential in scrutinizing counsel's performance. *Id*. Courts indulge a strong presumption that counsel's conduct falls within wide range of reasonable professional assistance and that the challenged action might be considered sound trial strategy. *Id*. at 689. "Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit will not second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Green v. Johnson,* 116 F.3d 1115, 1122 (5th Cir. 1997) (quoting *Garland v. Magio,* 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)).

Deficient performance will be found to be prejudicial only upon a showing that, but for counsel's errors, there is a reasonable probability that the final result would have been different and that confidence in the reliability of the verdict is undermined. *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Armstead v. Scott*, 37 F.3d 202, 206-07 (5th Cir. 1994). A defendant must show "actual

14

prejudice" as a result of his counsel's deficient performance. *Moody v. Johnson*, 139 F.3d 477, 482 (5th Cir. 1998). The petitioner is required to show "that the attorney's errors were so deficient as to render the verdict fundamentally unfair or unreliable." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997). A petitioner must affirmatively prove and not merely allege prejudice. *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994). *See Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994) (stating that the Fifth Circuit requires an appreciable showing of prejudice).

To show prejudice in sentencing, a petitioner must show that his sentence would have been significantly less harsh. *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). In *U.S. v. Grammas*, 376 F.3d 433 (5th Cir. 2004), the Court stated:

> We pause here to recognize the distinction between the federal guidelines and state sentencing regimes. State sentencing regimes tend to be more discretionary than the lock-step and predictable federal system. Due to the volatile nature of state regimes, "practically any error committed by counsel could [result] in a harsher sentence." *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). Thus, we emphasize that our adoption of the *Glover* [*v. U.S.*, 531 U.S. 198 (2001)] "any amount of jail time" test only applies to cases involving the federal guidelines. *See Daniel v. Cockrell*, 283 F.3d 697, 706-07 fns. 16 & 17.

*Id.* at 438 n.4. Thus, under *Grammas*, the *Spriggs* "significantly less harsh" test applies in any determination of prejudice in the punishment phase of petitioner's state trial.

### A. Failure to impeach Sylvia Meledez's statement and testimony at trial.

Gonzalez contends counsel failed to impeach Sylvia Meledez regarding whether she walked with Gonzalez to the car. Gonzalez also complains about counsel's permitting the statement to be introduced into evidence.

Gonzalez is incorrect. Counsel impeached Meledez with her statement. 3 SF 118-119, 120.

Regarding the introduction of the statement, apparently counsel wanted to explore the details of Meledez's written statement, whether it was for impeachment or not. 3 SF 118. To do so, he had

to have the statement introduced.

Gonzalez has not shown deficient performance or prejudice. He has not shown that the state court's rejection of this claim was unreasonable.

**B.      Counsel was not prepared.**

Gonzalez contends counsel was not prepared. Gonzalez does not explain what counsel should have discovered and how that should have been used at trial. Gonzalez has not shown deficient performance or prejudice. He has not shown that the state court's rejection of his claim was unreasonable.

**C.      Counsel did not locate Rachel Rivera and Sylvia Meledez.**

Gonzalez contends counsel did not locate two witnesses. Gonzalez does not appear to have raised this claim in state court, so it is unexhausted and procedurally barred. *Ogan v. Cockrell*, 297 F.3d at 358 n.6; *Martinez v. Johnson*, 255 F.3d at 239.

Alternatively, the claim lacks merit. Meledez testified at trial. Gonzalez does not explain what counsel would have discovered had he located Rivera. Gonzalez has not shown deficient performance or prejudice.

**D.      Counsel did not subpoena Rachel Rivera or Joe Mata.**

Gonzalez contends that counsel did not subpoena two witnesses. Gonzalez does not appear to have raised this claim in state court, so it is unexhausted and procedurally barred. *Ogan v. Cockrell*, 297 F.3d at 358 n.6; *Martinez v. Johnson*, 255 F.3d at 239.

Alternatively, the claim lacks merit. To support a claim of ineffective assistance of counsel due to uncalled witnesses, the petitioner must prove that the witness was willing and able to testify, and the substance of the witness' testimony. *Alexander v. McCotter*, 775 F.2 595 (5th Cir. 1985). "In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." *See Alexander v. McCotter,* 775 F.2d at 602. Finally, "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and

because allegations of what a witness would have testified are largely speculative." *See Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir. 1981).

Here, Gonzalez has not shown that Rivera or Mata would have been able to testify, and he has not shown the substance of their testimony. Gonzalez has not shown deficient performance or prejudice.

### E. Counsel did not raise self-defense.

Gonzalez contends counsel did not raise self-defense. Gonzalez does not appear to have raised this claim in state court, so it is unexhausted and procedurally barred. *Ogan v. Cockrell,* 297 F.3d at 358 n.6; *Martinez v. Johnson,* 255 F.3d at 239.

Alternatively, the claim lacks merit. Gonzalez does not explain what counsel could have done to raise self-defense. In the federal writ petition, Gonzalez attempts to offer his version of what happened at the scene. However, the appropriate time to have presented evidence of self-defense was at trial, particularly during the defense's case. But, Gonzalez had absconded by that time. 4 SF 3. Gonzalez voluntarily left because he did not like the way the trial was going. Fed. Writ Pet. Memorandum at 19, 50. Thus, it is not clear what counsel could have done without Gonzalez to raise self-defense. Moreover, Gonzalez has not shown he would have met the requirements to justify the use of deadly force in self-defense. Tex. Penal Code §§ 9.31, 9.32. It is not clear why he retrieved a gun from his car and confronted the victim and his friends rather than get into his car and leave. Gonzalez has not shown deficient performance or prejudice.

### F. Failure to preserve an issue regarding accidental shooting.

Gonzalez contends counsel did not preserve the issue that the shooting was accidental. Gonzalez does not appear to have raised this claim in state court, so it is unexhausted and procedurally barred. *Ogan v. Cockrell,* 297 F.3d at 358 n.6; *Martinez v. Johnson,* 255 F.3d at 239.

Alternatively, the claim lacks merit. It is not at all clear what Gonzalez contends counsel should have done specifically. Gonzalez has not shown deficient performance or prejudice.

### G. Failure to properly file a motion for continuance.

Gonzalez contends counsel failed to properly file a motion for continuance.

Although counsel's motion for a continuance was oral, the trial court considered it. SHCTr 262. Thus, Gonzalez has not shown deficient performance or prejudice. He has not shown that the state court's rejection of this claim was unreasonable.

## DENIAL OF REQUEST FOR CHARGE ON LESSER INCLUDED OFFENSES

Gonzalez contends the trial court erred in denying his request for a jury charge on lesser included offenses

In a non-capital case, as here, "the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue." *Creel v. Johnson*, 162 F.3d 385, 390 (5th Cir. 1998); *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir. 1985). Thus, Gonzalez has not shown the denial of any constitutional right.

Also, this issue was raised on appeal. The appellate court addressed the issue as follows:

> In his first issue, Hernandez argues the trial court erred in denying his request for a jury charge on the lesser included offenses of involuntary manslaughter and criminally negligent homicide. In determining whether an accused is entitled to a jury charge on a lesser included offense, we apply the two-pronged *Royster-Aguilar* test . *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985); *Royster v. State*, 622 S.W.2d 442, 446-47 (Tex. Crim. App. 1981). First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, some evidence must exist in the record which would permit the jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense and not the greater offense. *Arevalo v. State*, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997); *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993).

> Both involuntary manslaughter and criminally negligent homicide are lesser included offenses of murder, meeting the first prong of the test. *Burnett v. State*, 865 S.W.2d 223, 228 (Tex. Crim. App. 1993). In examining the second prong of the *Royster-Aguilar* test, we must look at the distinction between murder, involuntary manslaughter and criminally negligent homicide. The only distinction lies in the culpable mental state accompanying the defendant's homicidal act; murder requires the defendant have acted knowingly or intentionally, while involuntary manslaughter requires a culpable mental state of recklessness and criminally negligent homicide dictates the defendant acted with criminal negligence. *Burnett*, 865 S.W.2d at 228-29.

In order for a defendant to be entitled to a jury charge on involuntary manslaughter or criminally negligent homicide, the record must contain "some" evidence that the defendant did not intend the resulting death or know that it was reasonably certain to occur. If this evidence is present, the record must then be examined to see if it indicates whether the defendant was aware of the risk that his conduct could result in the unintentional killing of the deceased. *Burnett,* 865 S.W.2d at 229.

> The evidence in the immediate case shows that Hernandez intentionally pointed a loaded gun at the deceased, knowing the potential risk involved. He thereby demonstrated an awareness of a risk created by that conduct and chose to disregard that risk. *Burnett,* 865 S.W.2d at 229; *Thomas v. State,* 699 S.W.2d 845, 850 (Tex. Crim. App. 1985). Because Hernandez disregarded the risk and because he acted voluntarily, the second prong of the *Royster-Aguilar* test is not met and the lesser included offenses of involuntary manslaughter and criminally negligent homicide were properly excluded from the jury charge. Accordingly, we overrule Hernandez's first issue.

*Gonzalez v. State,* slip op. at 2-3.

Gonzalez has not shown that the state court's rejection of the claim was unreasonable.

## PROSECUTORIAL MISCONDUCT

Gonzalez contends the prosecutor introduced perjured testimony. Gonzalez asserts that was shown by Meledez's contradictory statements. He also asserts the bullet was false evidence.

Gonzalez's claim concerning the bullet is unexhausted, but procedurally barred. *Ogan v. Cockrell*, 297 F.3d at 358 n.6; *Martinez v. Johnson*, 255 F.3d at 239. Gonzalez raised an issue in state court about prosecutorial misconduct regarding Meledez's testimony, SHCTr at 46, but Gonzalez raised an issue about the bullet only in the context of the trial court's admitting the bullet into evidence. SHCTr at 42. Gonzalez did not raise a prosecutorial misconduct claim about the bullet. Alternatively, the claim regarding the bullet lacks merit.

The prosecution may not knowingly use perjured testimony or allow perjured testimony to go uncorrected. *Napue v. Illinois,* 360 U.S. 264, 269, 79 S. Ct. 1173, 1177 (1959); *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766 (1972). To prove a due process violation in such a case, a petitioner must demonstrate (1) that the testimony in question was actually false, (2) that the prosecutor was aware of the perjury, and (3) that the testimony was material. *Faulder v. Johnson,*

81 F.3d 515, 519 (5th Cir. 1996). Perjured testimony is material only when "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000); *see United States v. Washington*, 44 F.3d 1271, 1282 (5th Cir. 1995) (materiality prong not met where allegedly perjurious statements "have nothing to do with [the defendant's] guilt or innocence" and evidence of guilt is "overwhelming"). Most importantly, on federal habeas review, the more demanding *Brecht* [4] harmless error standard also applies. *Barrientes*, 221 F.3d at 756. Contradictory testimony from witnesses, inconsistencies within a witness' testimony, and conflicts between reports, written statements and the trial testimony of prosecution witnesses do not, standing alone, establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989); *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988); *United States v. Viera*, 819 F.2d 498, 502 (5th Cir. 1987); *United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981).

Gonzalez's contention about Meledez's contradictory statements do not, standing alone, establish perjury. *Koch v. Puckett*, 907 F.2d at 531. Additionally, Gonzalez has not shown that the prosecutor knew there was perjury, and Gonzalez has not shown materiality.

Regarding the bullet, as discussed, *supra*, Gonzalez's claim is based on chain of custody. Again, that involves the weight that the jury may decide to give that evidence, rather than its admissibility. *Binyon v. State*, 545 S.W.2d at 452; *see also United States v. Casto*, 889 F.2d at 568-69.

Gonzalez has not shown that the state court's rejection of this claim was unreasonable.

## FIFTH AMENDMENT - ADMISSION OF STATEMENT

Gonzalez contends his Fifth Amendment rights were violated by the admission of his statement into evidence. The basis of his claim is not clear. Gonzalez contends there was a violation of his "right of reading his miranda rights, and presence of an counselor." Fed. Writ Pet.

---

[4] *Brecht v. Abramson*, 507 U.S. 619, 113 S. Ct. 1710 (1993).

Memorandum at 29. He also asserts that the use of a supplemental police report somehow "constitutes a miranda violation of the defendant's Constitutional right to know the existence of his supplemental report." *Id.*

In order for a federal writ to issue, there must be a violation of "the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. at 68, 112 S. Ct. at 480. This court must limit its opinion to whether the facts in this case present a federal constitutional violation. In this case, no such violation occurred. "*Miranda* warnings are not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *United States v. Smith*, 7 F.3d 1164, 1170 (5th Cir. 1993) (quoting *Michigan v. Tucker*, 417 U.S. 433, 444, 94 S. Ct. 2357, 2364 (1974)); *see also Oregon v. Elstad*, 470 U.S. 298, 305-311, 105 S. Ct. 1285, 1291-1293 (1985) (declining to extend the "fruit of the poisonous tree" doctrine to Miranda violations); *United States v. Harrell*, 894 F.2d 120, 125 (5th Cir.), *cert. denied*, 498 U.S. 834, 111 S. Ct. 101 (1990) ("The [fruit of the poisonous tree] doctrine operates only where constitutional violations arise, and *Miranda*'s prophylactic warnings are not constitutional rights in and of themselves.").

It is not clear how Gonzalez claims his right against compulsory self-incrimination was violated. Gonzalez was in a waiting area while an officer was writing a report. 3 SF 205, 208. The officer was not asking questions. 3 SF 205. Gonzalez said the machismo got the best of him. 3 SF 205, 208. The officer testified that the statement did not appear in the officer's report. 3 SF 207. Nothing in the record shows that Gonzalez's Fifth Amendment rights were violated. He was not being questioned when he made the statement.

## IMPROPER JURY ARGUMENT

Gonzalez contends the prosecutor made improper jury argument. Gonzalez points out several instances in which he claims the prosecutor injected his own version of events during questioning of witnesses and the prosecutor injected his opinion in jury argument. Gonzalez raised this claim in his federal petition and at pp. 27-35 of his supporting memorandum. In state court, Gonzalez

raised this claim in his memorandum at SHCTr at 49-50. In state court, however, Gonzalez did not complain about the prosecutor's argument that Gonzalez shot the victim like he was a dog. Therefore, that claim is unexhausted and procedurally barred. *Ogan v. Cockrell*, 297 F.3d at 358 n.6; *Martinez v. Johnson*, 255 F.3d at 239.

On federal habeas corpus review of a state court conviction, the appropriate standard of review for claims of improper argument is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). It "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 1891. Instead, to obtain relief on this claim, petitioner must show that the comments in question "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.*; *see also Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002); *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir.2000), *cert. denied*, 121 S. Ct. 1250 (2001). In order to establish this, "the petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986), *cert. denied*, 484 U.S. 873 (1987). When claiming improper comments by the prosecutor, the petitioner carries a substantial burden. *United States v. Diaz-Carreon*, 915 F.2d 951, 956 (5th Cir. 1990). Additionally, improper argument by a prosecuting attorney should be found to exceed constitutional limits only in the most "egregious cases." *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987) (*quoting Menzies v. Procunier*, 743 F.2d 281, 288-89 (5th Cir. 1984) (citation omitted)). Finally, argument which is otherwise improper may be acceptable if made in rebuttal to defense argument. *Darden*, 477 U.S. at 181-82; *see United States v. Young*, 470 U.S. 1, 16 (1985) (prosecutor's remark was countering defense counsel's argument that the evidence established no such crime.).

The Court of Criminal Appeals has repeatedly held the following to be proper areas for argument: 1) summary of the evidence; 2) reasonable deductions from the evidence; 3) response to

opposing counsel's argument; and 4) pleas for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex.Crim.App. 1990); *see also Forte v. State*, 935 S.W.2d 172, 178 (Tex.App.–Fort Worth 1996, pet. ref'd) (a trial prosecutor is permitted to urge the jurors to accept the credibility of State's witnesses after their credibility has been attacked by the defendant's trial attorney in her final argument to the jury.); *Giesberg v. State*, 945 S.W.2d 120, 126 (Tex.App.–Houston [1st Dist.] 1997), *aff'd on other grounds*, 984 S.W.2d 245 (Tex.Crim.App. 1998) (A trial prosecutor can also support the credibility of testifying police officers in a particular case.); *Gaffney v. State*, 937 S.W.2d 540, 543 (Tex.App.–Texarkana 1996, pet. ref'd) (a trial prosecutor is permitted to argue that a defense witness is not worthy of belief.).

Here, the matters about which Gonzalez complains fell within the range of proper argument or comment. Although Gonzalez may disagree with the testimony of witnesses and the State's theory of what happened during the offense, that does not mean that the prosecutor should have been prevented from presenting the State's case. Additionally, Gonzalez has not demonstrated harm.

Gonzalez has not shown that the state court's rejection of this claim was unreasonable.

## FAILURE TO DISCLOSE EXCULPATORY EVIDENCE

Gonzalez contends the prosecutor failed to disclose exculpatory evidence. Specifically, Gonzalez complains about a police report, statements of witnesses, a toxicology report, an autopsy report, a G.S.R. test, a firearms report, the clerk's record, and the district attorney's file. Gonzalez also contends the prosecutor misled the jury about Gonzalez's eligibility for probation and the prosecutor failed to introduce a presentence investigation report into evidence. Of these matters, the only ones that were raised in state court concerned a toxicology report and Gonzalez's application for probation. SHCTr at 51.[5] Thus, Gonzalez's other claims are unexhausted and procedurally

---

[5] Gonzalez's state writ petition memorandum jumps from page 29, with a heading "Exclusion of Exculpatory Evidence" and ending with a paragraph about the application for probation, to page 32, with a heading "Lack of Subject Matter Jurisdiction." The clerk-stamped pages of the state writ record for those two pages are 51 and 52.

barred. *Ogan v. Cockrell*, 297 F.3d at 358 n.6; *Martinez v. Johnson*, 255 F.3d at 239. Alternatively, those claims lack merit.

The Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), held that the suppression by the prosecution of evidence favorable to an accused after a request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, Gonzalez must prove that (1) the prosecutor suppressed or withheld evidence, (2) favorable to the defense, and (3) material as to issues of guilt or punishment. *Id.* Evidence is material with in the meaning of *Brady* if there is a reasonable probability that the proceeding would have been different had the evidence been disclosed. *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1978). Brady evidence that does not constitute "significant new evidence" does not warrant habeas relief. *Westley v. Johnson*, 83 F.3d 714, 725 (5th Cir. 1996). *Brady* claims only encompass "the discovery of information which had been known to the prosecution but unknown to the defense." *Id.* at 103. "Under *Brady*, the prosecution has no obligation to produce evidence or information already known to the defendant, or that could be obtained through the defendant's exercise of reasonable diligence." *Castillo v. Johnson*, 141 F.3d 218, 223 (5th Cir. 1998). There is no *Brady* violation if the defendant, using due diligence, could have obtained the information. *Williams v. Scott*, 35 F.3d 159, 163 (5th Cir. 1994); *see also West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996) ("Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.").

The record suggests that there were no *Brady* violations. At the beginning of trial, defense counsel said that he read the file and the witnesses' statements contained therein. 2 SF 3. He had been given a copy of the autopsy report. 2 SF 3. The State provided a list of its witnesses. 3 SF 6.

The State was investigating the criminal histories of its witnesses. 3 SF 5. The record does not suggest that the State was trying to conceal anything from defense counsel.

Gonzalez's exhausted claim, that the prosecutor withheld knowledge about Gonzalez's eligibility for probation, that does not show a *Brady* violation. Gonzalez would have been aware of his own action in signing an application for probation. Thus, it was not withheld from Gonzalez. Moreover, it was Gonzalez's burden to prove he was eligible for probation. It was not the prosecutor's burden.

Gonzalez's other exhausted claim, that the prosecutor withheld a toxicology report, also does not show a *Brady* violation. Gonzalez has not shown that there was any toxicology report for him. There was a toxicology report for the victim. 4 SF 38-40. However, nothing in the record shows any toxicology report on Gonzalez. Moreover, even if there were such a toxicology report, Gonzalez has not shown that it contained exculpatory material. Also, Gonzalez has not shown that the prosecutor failed to turn it over to defense counsel. Nor has Gonzalez shown materiality. Finally, a toxicology report on Gonzalez would have shown what substances Gonzalez had taken, such as alcohol or drugs. Gonzalez would have known what he had ingested. Therefore, a toxicology report would not have provided Gonzalez with information that was not already known to him.

Turning to Gonzalez's unexhausted and procedurally barred claims, the failure to introduce evidence, such as a presentence investigation report, is not the same as withholding exculpatory evidence from the defense. Also, as explained, *supra*, a presentence investigation report is not used in Texas when the jury assesses punishment. Additionally, any information in a presentence investigation report would be about Gonzalez, and he would know his personal information.

Gonzalez has not shown that there was any G.S.R. test, that if there was such a test the results were exculpatory, or that if there was such a test the prosecutor did not show the results to defense counsel. He has not shown materiality.

Gonzalez has not shown that the report from the firearms examiner contained evidence favorable to Gonzalez. The firearms examiner testified, and he brought his report with him to trial.

4 SF 7. Gonzalez has not shown that defense counsel did not see that report. Gonzalez has not shown materiality.

Regarding the clerk's record, defense counsel would have had access to documents filed with the clerk. Gonzalez has not shown a *Brady* violation. He has not shown there was anything favorable to him that was in the clerk's record and that was unknown to him or his attorney. Gonzalez has not shown materiality.

Regarding the prosecutor's file, there is no constitutional right to see the entire contents of the prosecutor's file. *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987). Also, defense counsel read the prosecutor's file. 2 SF 3. Gonzalez has not shown there was anything favorable to him in the file that was not known to defense counsel. Gonzalez has not shown materiality.

Regarding the police report, defense counsel had a copy of it. 3 SF 206. Gonzalez has not shown there was anything favorable to him in the report that was not known to defense counsel. Gonzalez has not shown materiality.

Regarding witnesses' statements, defense counsel read those statements. 2 SF 3. Gonzalez has not shown there was anything favorable to him in the statements that was not known to defense counsel. Gonzalez has not shown materiality.

Regarding the autopsy report, as noted previously, defense counsel was given a copy of the autopsy report. 2 SF 3. Gonzalez has not shown there was anything favorable to him in the report that was not known to defense counsel. Gonzalez has not shown materiality.

Gonzalez has not shown that the state court's rejection of this claim was unreasonable.

## LACK OF JURISDICTION

Gonzalez contends that the court lacked jurisdiction because of flaws in the indictment. The indictment is at Tr 10. Specifically, Gonzalez contends that the presentment of the indictment states that the offense was committed in 1983, which was ten years before the indictment in 1993, an impossible date. Gonzalez also asserts the indictment did not state an offense code. He contends the indictment does not allege the elements of the crime. He contends the prosecutor presented false

26

evidence to the grand jury. Gonzalez contends that the indictment was from the 186th District Court, but the case was tried in the 226th District Court, without a transfer order.

None of these claims are exhausted. In state court, Gonzalez asserted there was a lack of jurisdiction, but it was based on an argument that the Texas Penal Code was not the product of valid legislation. SHCTr at 52-81. He did not raise the arguments he now raises in his federal writ petition and memorandum. Although Gonzalez asserts he raised this claim in a motion to object to the findings of fact and conclusions of law, Fed. Writ Pet. Memorandum at 44, that is not the case. That document is in the state court records under No. 60,890-01, event date 05/12/2005, with remarks "motion to object to the Sta FF/CCL in support of 11.07." The document merely objects to the findings and conclusions and does not present the argument on which Gonzalez now relies. Therefore, Gonzalez's claim is unexhausted but procedurally barred. *Ogan v. Cockrell*, 297 F.3d at 358 n.6; *Martinez v. Johnson*, 255 F.3d at 239. Alternatively, the claim lacks merit.

The presentment of an indictment is not the indictment. Moreover, the presentment does not state that the offense occurred in 1983. It states that cases were returned and filed in the 226th District Court under a rotation system in accordance with a 1983 order that, apparently, set up the rotation system.

Gonzalez claims that the indictment does not contain an offense code, but he does not explain why that would be necessary to vest jurisdiction in the trial court. Gonzalez claims that the indictment does not allege the elements of the offense, but the indictment does allege the elements of murder. Tr 10; Tex. Penal Code § 19.02(b)(1), (2). Additionally, that is not jurisdictional.

Gonzalez asserts the prosecutor presented false evidence to the grand jury, but that claim is conclusory. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F. 2d 1008, 1011 (5th Cir. 1983); *see also Woods v. Cockrell*, 307 F.3d 353, 357 (5th Cir. 2002) (a statement of a legal conclusion, without a serious attempt to argue or substantiate the issue, is a waiver or abandonment

of the issue); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("mere conclusory allegations on a critical issue are insufficient to raise a constitutional claim").

Gonzalez contends there was no transfer order. No transfer order is required when one court empanels the grand jury that returns an indictment in the case, but the case is actually filed in another court. *Bourque v. State*, 156 S.W.3d 675, 678 (Tex.App.-Dallas 2005, pet. ref'd). As shown by the presentment, Tr 1, it appears that the indictment was among those filed in the 226th District Court.

Gonzalez has not shown a lack of jurisdiction.

## CONVICTED AND SENTENCED IN ABSENTIA

Gonzalez contends he was convicted and sentenced in absentia. Gonzalez voluntarily left because he did not like the way the trial was going.[6] Fed. Writ Pet. Memorandum at 19, 50. The right to be present at trial can be waived by the voluntary absence of the defendant. *Clark v. Scott*, 70 F.3d 386, 388 (5th Cir. 1995). Here, Gonzalez's voluntary absence waived his constitutional right to be present, so he is not entitled to habeas corpus relief.

## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Gonzalez claims appellate counsel rendered ineffective assistance because counsel failed to file a notice of appeal; failed to supplement the brief; failed to provide Gonzalez with a copy of the complete record; failed to include witnesses' statements; failed to provide him a copy of the State's brief; and failed to raise insufficiency of the evidence. Gonzalez raised a claim in state court about ineffective assistance of appellate counsel. He did not complain about the failure to include witnesses' statements and the failure to raise insufficiency of the evidence. SHCTr at 86-90. Thus, those claims are unexhausted but procedurally barred. *Ogan v. Cockrell*, 297 F.3d at 358 n.6; *Martinez v. Johnson*, 255 F.3d at 239. Alternatively, those claims lack merit.

---

[6] In state court, Gonzalez claimed he was not present because his attorney had told him the case would be postponed. SHCTr 30-31. Gonzalez claimed to have been shocked that the proceedings occurred without him. SHCTr 31. Now, however, Gonzalez admits that he left voluntarily, Fed. Writ Pet. Memorandum at 50, because he did not like how the trial was going. Fed. Writ Pet. Memorandum at 19.

Appellate counsel responded to the state writ application with an affidavit in which she explained her appellate representation of Gonzalez. SHCTr at 250-56.

Regardless of who filed the notice of appeal, one was filed and it was treated as timely. Tr 92. Thus, Gonzalez cannot show he was prejudiced.

Gonzalez complains that counsel did not supplement the brief with an affidavit of his version of the events. "An appellate court may not consider factual assertions that are outside the record, and a party cannot circumvent this prohibition by submitting an affidavit for the first time on appeal. While the record may be supplemented under the appellate rules if something has been omitted, the supplementation rules cannot be used to create new evidence." *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004). Because such supplementation would have been improper, counsel's performance was neither deficient nor prejudicial.

Gonzalez asserts counsel did not provide him with a complete record. Gonzalez does not point to Supreme Court case law requiring an appellate attorney to furnish a copy of the record to the appellant. Moreover, counsel apparently offered to provide Gonzalez a copy if he would pay the costs of copying. SHCTr 188. Gonzalez has not shown deficient performance or that he was prejudiced.

Gonzalez claims counsel failed to include statements of witnesses. The only statement of a witness that was introduced at trial was that of Meledez. It was included in the appellate record. 5 SF State's Exhibit 11. Gonzalez has not shown deficient performance or that he was prejudiced.

Gonzalez asserts counsel failed to give him a copy of the State's brief. Gonzalez does not point to any Supreme Court case that requires an appellate attorney to provide a copy of the State's brief to the appellant. Nevertheless, Gonzalez has not shown how he was prejudiced.

Gonzalez claims counsel failed to raise insufficiency of the evidence. He has not shown that the evidence was insufficient. Based on the testimony of the witnesses set out in the Statement of Facts portion of this answer, the evidence was sufficient. Gonzalez has not shown deficient performance or that he was prejudiced.

Gonzalez has not shown that the state court's rejection of his ineffective assistance of appellate counsel claim was unreasonable.

## DENIED ACCESS TO COURT - MOTION FOR REHEARING

Gonzalez contends he sent a motion for rehearing to the Court of Criminal Appeals before the December 12, 2003, due date, but the court informed him that they did not receive any such motion for rehearing. He attaches what purports to be a postal service tracer showing that something was received on December 5, 2003. Gonzalez claims he was denied his right to access the court.

According to correspondence Gonzalez included as part of his state writ application, Gonzalez appears to have sent a letter to the Court of Criminal Appeals asking why his PDR was refused. SHCTr at 163. Although the letter purports to be dated November 4, 2003, it refers to letters dated as late as November 17, 2003. SHCTr at 163. Thus, it must have been sent some time after November 17, 2003. Apparently, the Court of Criminal Appeals sent Gonzalez a letter informing Gonzalez of the status of his case. SHCTr at 158. It seems likely that Gonzalez sent the letter appearing at SHCTr at 163 to the court in early December 2003, to which the court responded on December 11. That makes it likely that the letter Gonzalez purportedly sent by certified mail was that letter requesting information, rather than a motion for rehearing. Perhaps Gonzalez confused that letter with a motion for rehearing.

Nevertheless, Gonzalez attempted to explain to the Court of Criminal Appeals that he had sent a motion for rehearing and that it had been received by the court on December 5, 2003. *See* Letter received in Court of Criminal Appeals on May 21, 2004. Gonzalez told the court that he had sent a motion for rehearing by certified mail and that a U.S. postal service tracer showed that an item had been received by court personnel on December 5, 2004. Gonzalez did not attach any such tracer receipt or mail receipt to his letter. Additionally, before Gonzalez sent that May 2004 letter, he simply tried to file another motion for rehearing, without seeking leave to file it out-of-time explaining any of the purported circumstances. *See* Motion for Rehearing received in the Court of Criminal Appeals on April 20, 2004. If the return receipt attached to that motion for rehearing was

supposed to be the receipt for a motion for rehearing purportedly sent to the court in December 2003, nothing in the motion for rehearing explained that. Also, Gonzales never attached a copy of what purported to be the December 2003 motion for rehearing to his April 2004 motion for rehearing, to his May 2004 letter, to his state writ application, or even to his federal writ petition.[7] In fact, the motion for rehearing received in April 2004 was dated October 18, 2003. All of that undercut Gonzalez's claim that he sent a motion for rehearing in December 2003.

Based on the foregoing, it was not unreasonable for the Court of Criminal Appeals to decline to find that Gonzalez affirmatively proved that he had sent a motion for rehearing in December 2003, which had been misplaced by the court. Thus, the Court of Criminal Appeals did not deny Gonzalez due process by declining to entertain his motion for rehearing received in April 2004. Although Gonzalez attempted to prove in his state writ application that he had sent a motion for rehearing in December 2003, his state writ application was filed in June 2004, which was well after the time had expired for filing the motion for rehearing. If Gonzalez wanted to persuade the court that the court had misplaced a timely motion for rehearing, the time to have done so was when he found out that the court records did not show he filed a timely motion for rehearing.

Gonzalez has not shown that the state court's rejection of this claim was unreasonable.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the petition for writ of habeas corpus with prejudice and *sua sponte* deny a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

---

[7] Any attempt by Gonzalez to now provide this Court with a copy of his purported December motion for rehearing would result in that aspect of his claim being unexhausted, since he did not provide such evidence to the state court.

KENT C. SULLIVAN
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
  for Criminal Justice

GENA BUNN
Assistant Attorney General
Chief, Postconviction Litigation Division

*Lead Counsel

FORREST LUMPKIN*
Assistant Attorney General
State Bar No. 12685550

P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 936-1400
(FAX): (512) 936-1280

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing pleading is being served by placing same in the United States Mail, postage prepaid, on the **15th day of August 2006**, addressed to:

Bernardo Hernandez Gonzalez
TDCJ-CID No. 1075996
Polunsky Unit
3872 FM 358 South
Livingston, TX  77351

FORREST LUMPKIN
Assistant Attorney General