**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **BERNARDO HERNANDEZ GONZALEZ,** | § | |
| **TDCJ No. 1075996,** | § | |
| | § | |
| **Petitioner,** | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | **SA-06-CA-0354 NN** |
| **NATHANIEL QUARTERMAN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER DENYING PETITION FOR HABEAS RELIEF

A state jury found the petitioner, Bernardo Hernandez Gonzalez, guilty of committing the offense of murder and assessed punishment at 80 years in prison. During trial, three witnesses described how Gonzalez exited a nightclub, became offended after teenagers laughed at his old car, took a handgun from his car, and shot one of the teenagers. After the second day of trial, Gonzalez absconded. The trial judge proceeded with the last day of trial. After trial, the trial judge issued a warrant for Gonzalez's arrest. The arrest warrant was executed six years later and Gonzalez was taken into custody.

Once in custody, Gonzalez began his appeal process and exhausted his state court remedies. He then petitioned for federal habeas relief under 28 U.S.C. § 2254. I have jurisdiction to decide Gonzalez's petition in light of the consent of the parties[1] under 28 U.S.C. § 636(c)(1).

Gonzalez's federal petition is multifarious and does not consistently set forth a legal basis

---

[1]*See* Order, dated 11 April, 2006, docket entry #28 (directing reassignment of this cause to United States Magistrate Judge Nancy Stein Nowak).

for his claims.  To ensure that Gonzalez receives a meaningful review, I liberally construed his petition, identified a legal basis for his claims to the extent that the petition suggests one, and grouped my discussion of his claims by legal theory.  To the extent that I may have misconstrued a complaint, Gonzalez waived that complaint by failing to articulate a legal argument that he has been deprived of some right under federal law.[2]

### Standards for Federal Habeas Relief

A federal court may grant a state prisoner habeas relief in the following circumstances:

(1) [the state court adjudication] resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [the state court adjudication] resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[3]

In order for a federal court to review a particular complaint, the petitioner must have exhausted that claim in state court.[4]  "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court."  In reviewing the state court's adjudication of exhausted claims, the factual findings of the state habeas court are entitled to a rebuttable presumption of correctness.[5]

---

[2]*See Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) ("Federal habeas relief cannot be had 'absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'").

[3]28 U.S.C. § 2254(d).

[4]*See Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999) (explaining the exhaustion requirement).

[5]*See* 28 U.S.C. § 2254(e)(1).  "The applicant [has] the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*

**Gonzalez's Claim Regarding a Tainted Jury**

Gonzalez contends that the trial judge erred by refusing to strike the venire panel.  He maintains that a comment made during voir dire by a particular venireman tainted the entire jury panel to the extent that he was denied a fair trial.  "The [S]ixth and [F]ourteenth [A]mendments secure the right of an accused in all criminal prosecutions to trial by an impartial jury."[6]  "Voir dire 'plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored.'"[7]

In this case, Gonzalez's attorney asked prospective jurors the following question: "is there anybody that has a predisposition that because this is a Murder case, you could not find him innocent of Murder and perhaps consider the lesser offenses which are included in Murder, just by the fact that it is a Murder case?"  Venireman No. 43 answered, "Well, because it's a Murder case, my sister-in-law was Murdered last week.  It sounds like it is going to turn out the same way.  I feel he's guilty right away."  Then the following exchange occurred:

| [The attorney]: | You feel he's guilty right away? |
|---|---|
| [Venireman No. 43]: | Yeah |
| [The attorney]: | By the simple fact it is a Murder case? |
| [Venireman No. 43]: | Yes.  I was thrust into this same situation just this past week. |
| [The attorney]: | Thank you for being so candid.  Is there anybody else that harbors or feels the same way about a Murder case? |

---

[6]*King v. Lynaugh*, 850 F.2d 1055, 1058 (5th Cir. 1988).

[7]*King*, 850 F.2d at 1058 (internal citation omitted).

3

No one responded.

In addressing this complaint, the state habeas judge concluded that because Gonzalez raised the issue of removal of the jury panel as part of his direct appeal, he was precluded from raising the issue in his state habeas.  The state court of appeals, however, did not address the issue.  Although the state habeas judge was mistaken in this regard, Gonzalez fairly presented this claim to the state court.  He has not, however, demonstrated that the state adjudication of his offense resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[8]

During voir dire, no other venireman expressed a sentiment similar to that of Venireman No. 43.  The record does not indicate that any juror was influenced in any way by Venireman No. 43's response.  Instead, the record indicates that the voir dire process did exactly what it is intended to do—"to provide the parties the benefit of an impartial trier of fact."[9]  Here, Venireman No. 43 expressed prejudice towards Gonzalez and indicated he could not be impartial.  Although the record does not reflect whether Venireman No. 43 was struck for cause or whether Gonzalez's attorney exercised a preemptory strike against Venireman No. 43, the record does not reflect that that individual served as a member of Gonzalez's jury.  Gonzalez did

---

[8]28 U.S.C. § 2254(d).

[9]*United States v. Buckhalter*, 986 F.2d 875, 879 (5th Cir. 1993).  *See also United States v. Greer*, 968 F.2d 433, 437 (5th Cir. 1992) ("Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges.").

not show that the venireman's comment tainted the venire panel; consequently, he is not entitled to habeas relief on this basis.

### Gonzalez's Complaints Under the Confrontation Clause

Gonzalez complains about being convicted in his absence.  He raises this issue in a several ways—the state trial judge should have ascertained why he was not present for trial, his attorney failed to move for a mistrial when he failed to appear, the trial judge abused her power by proceeding with trial, the trial judge should have issued a warrant for his arrest rather than proceeding—but all of his arguments boil down to the same complaint.  Essentially, he complains that he was denied his Sixth Amendment right to confront witnesses against him.

"The Sixth Amendment establishes a criminal defendant's right to be present at trial and 'to be confronted with the witnesses against him . . . .'"[10]  A defendant's right to be present, however, is not absolute—the defendant's voluntary absence from trial waives this right.[11]  The state habeas court found that Gonzalez was voluntarily absent from his trial proceedings and concluded that the trial judge did not abuse her discretion by continuing with trial because Gonzalez was voluntarily absent.  The record supports that finding and conclusion.

Gonzalez stated in state habeas petition that his attorney advised him that he was going to postpone trial until the following Monday, but he stated in his federal petition that he "saw this unfairness of the trial and hence he 'absconded' in the last day of the trial."  This statement indicates that Gonzalez choose to be absent from trial.  In addition, the record shows that

---

[10]*Clark v. Scott*, 70 F.3d 386, 388 (5th Cir. 1995) (internal citation omitted).

[11]*See Clark*, 70 F.3d at 388; *Taylor v. United States*, 414 U.S. 17, 19 (1973) (explaining that a defendant's voluntary absence in a non-capital case "operates as a waiver of his right to be present").

Gonzalez did not appear for trial on the following Monday, but instead was apprehended six years later.  As a result, I agree with the state habeas court that Gonzalez waived his right to be present by his voluntary absence.  Gonzalez has not shown that the state court's adjudication of his case resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[12]  As a result, he is not entitled to habeas relief on this basis.

### Gonzalez's Due Process Claims

Gonzalez raises numerous arguments about why he did not receive a fair trial.  The basis of those complaints appears to be the Fifth Amendment's Due Process Clause and its application to the states through the Fourteenth Amendment.  The Due Process Clause provides that "[n]o person shall be . . . deprived of . . . liberty . . . without due process of law . . . ."  Because Gonzalez has several complaints that could implicate due process, I address them individually below.

**Perjured testimony**.  Gonzalez maintains the state prosecutor engaged in prosecutorial misconduct by presenting perjured testimony.  Although Gonzalez did not specifically identify the purported perjured testimony, he suggests that state's witness Sylvia Meledez lied during her testimony and that the prosecutor knew she was lying because her testimony contradicted her prior statement to police.  To establish a due process violation based on the prosecutor's knowing use of false or misleading evidence, Gonzalez must show "(1) the evidence was false, (2) the

---

[12]28 U.S.C. § 2254(d).

evidence was material, and (3) the prosecution knew that the evidence was false."[13]   Gonzalez

has not made this showing.

Gonzalez suggests that Sylvia lied when she testified about walking out of the nightclub

with him—Gonzalez maintains that a different individual walked out with him—and suggests

that Meledez's prior statement to police shows that she perjured herself.  About this complaint,

the state habeas court found as follows:

> [O]n cross examination trial counsel pointed out that Meledez's statement to
> police was inconsistent to her testimony on direct because:
>> a.  she did not tell police that she was so close to [Gonzalez] at the time of
>> the shooting;
>> b.  she said [Gonzalez] used profanity when addressing the victim prior to
>> the shooting in her statement but then stated no profanity was used when
>> testifying on direct.

The record supports these findings.

On direct examination, Meledez testified that she was standing in the doorway when

Gonzalez left the nightclub.  She stated that Gonzalez told her that he was leaving, she told him

goodbye, and  "[b]oth of us walked towards his car."   She then explained that "[w]hile we were

going towards the car, my brother and Alex [the victim] made a remark because he turned the

alarm off on his car."  She testified that Gonzalez did not say anything at that time, but "went

towards the car like he was going to get in, and he took something out."  She explained that she

was standing near Gonzalez at that time and that when he came back towards where she was

standing, she saw that Gonzalez had a gun.  She testified that Gonzalez walked towards Alex and

her brother and that she walked right beside him (Gonzalez).  She stated that when Gonzalez

pointed the gun at Alex and her brother, she hit Gonzalez's arm, Gonzalez pushed her away, and

---

[13]*Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997).

then Gonzalez raised the gun and fired.  On cross-examination, Meledez stated that she did not recall Gonzalez "cussing" at Alex and her brother.  Meledez's statement to police, however, is a little different.

In her statement, Meledez did not state that she left the nightclub with Gonzalez.  Instead, she stated that "[Gonzalez] walked out of the bar. . . . I shook hands with Mr. Gonzalez, and he walked to his car."  She also stated that she was about four feet from Gonzalez when he fired the gun.  She further stated that when Gonzalez started towards Alex, he stated in Spanish, "What's up asshole."

Meledez's testimony is inconsistent with her statement to police in that she did not indicate in her statement that she was very close to Gonzalez prior to the shooting.  Her testimony is also inconsistent with her statement in that she did not testify that Gonzalez said, "What's up asshole."  Gonzalez's attorney cross-examined Meledez about the inconsistencies.  But the inconsistencies do not show that Meledez's testimony was false.[14]  Instead, inconsistencies such as these establish a credibility question for the jury.  Because Gonzalez has not shown that Meledez's testimony was false, he cannot establish a due process violation on this basis.  Consequently, he is not entitled to habeas relief based on Meledez's testimony.

**Fabricated evidence**.  In addition to Meledez's  testimony, Gonzalez maintains that the trial judge admitted false evidence—specifically, state's exhibit 16.  Exhibit 16 is a .38 caliber bullet the State offered as the bullet taken from the victim's body.  Gonzalez characterizes the bullet as fabricated evidence and suggests that he was denied a fair trial because the exhibit was

---

[14]*See Koch v. Puckett* ,907 F.2d 524, 531 (5th Cir. 1990) (explaining that contradictory trial testimony does not prove that testimony was perjured, but "merely establishes a credibility question for the jury").

admitted.  Gonzalez complains that the trial judge erred in admitting exhibit 16 because the State did not prove that exhibit 16 was the actual bullet taken from the victim's body.  Gonzalez relies on his attorney's objection based on the chain of custody.  The state habeas court did not address the exhibit, but Gonzalez fairly presented this complaint in state court.

"[A] state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness."[15]  Federal habeas relief is warranted "only when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial . . . ."[16]  The particular evidence must be of "such magnitude as to constitute a denial of fundamental fairness under the due process clause.  "A trial judge is correct in allowing physical evidence to be presented to the jury as long as a reasonable jury could decide that the evidence is what the offering party claims it to be."[17]  "Any question as to the authenticity of the evidence is then properly decided by the jury. . . .[A] break in the chain of custody affects only the weight and not the admissibility of the evidence."[18]

Here, the jury had over-whelming evidence that Gonzalez committed the offense of murder.  Three eye witnesses testified and provided similar versions of the events that led to Alex's death.  Each described how Gonzalez left the nightclub, deactivated his car alarm, became offended when teenagers laughed because his car was too old for a car alarm, took a firearm from his car, approached Alex, pushed away Meledez when she hit his arm down, raised his arm and

---

[15]*Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998).

[16]*Little*, 162 F.3d at 862.

[17]*United States v. Casto*, 889 F.2d 562, 568 (5th Cir. 1989).

[18]*Casto*, 889 F.2d at 569.

fired.  Although the details provided by each witness varied to some degree, each witness collaborated the testimony of the other two witness.  Regardless of whether exhibit 16 was the actual bullet taken from Alex's body, the jury had enough evidence to find Gonzalez guilty of murder.  Exhibit 16 did not play a crucial, critical or significant role in Gonzalez's trial.  It is unlikely that the exhibit played any role in the jury determining that Gonzalez was guilty.  Consequently, exhibit 16 was not of a magnitude to constitute a denial of due process.  Because exhibit 16 was not of such magnitude, Gonzalez is not entitled to federal habeas relief on this basis.

**Failure to disclose exculpatory information**.  Gonzalez contends that the prosecutor withheld exculpatory material.  He complains that the prosecutor withheld the following documents: a police report which he maintains included statements by six witnesses, a supplemental police report, a police report written by Officer Baucum, a G.S.R. report, the evidence envelope containing the bullet from Alex's body, an autopsy report on Alex, his application for probation and a toxicology report on himself.  Gonzalez claims that these documents would exonerate him.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[19]  The term '*Brady* violation' is often "used to refer to any breach of the broad obligation to disclose exculpatory evidence . . . although . . . there is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a

---

[19]*Brady v. Maryland*, 373 U.S. 83, 87 (1963).

reasonable probability that the suppressed evidence would have produced a different verdict."[20]
To establish a *Brady* violation, a petitioner "must demonstrate that (1) the prosecution
suppressed evidence, (2) the evidence was favorable, (3) the evidence was material to either guilt
or punishment, and (4) discovery of the allegedly favorable evidence was not the result of a lack
of due diligence."[21]  "Vague allegations of unidentified favorable witnesses and unspecified
exculpatory evidence simply will not suffice to show a violation of due process."[22]

Of the documents Gonzalez complains about, Gonzales only complained about the
toxicology report and his application for probation in state court.  Because he did not complain
about the other documents, Gonzalez failed to exhaust his claims about those documents.[23]  As a
result, I will not address whether the prosecutor withheld the purported police report with
statements by six witnesses, the supplemental police report, a police report written by Officer
Baucum, the G.S.R. report, the evidence envelope containing the bullet from Alex's body, and an
autopsy report on Alex.[24]

---

[20]*Strickler v. Greene*, 527 U.S. 263, 281 (1999).

[21]*Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997).

[22]*United States v. Garza*, 165 F.3d 312, 315 (5th Cir. 1999).

[23]The record clearly reflects that Gonzalez's attorney had seen the witnesses' statements
and the autopsy report.

[24]Gonzalez refers to these documents by state's exhibit number and cites to the record
where the documents were premarked.  Even if the prosecutor had withheld the documents prior
to trial, Gonzalez would have known about the documents when the state gave the documents to
the court reporter for marking.  Had the documents contained exculpatory information, a *Brady*
objection would have been appropriate at that time, but Gonzalez did not object at trial.  It
appears Gonzalez knew about the documents prior to trial, but that he is really complaining that
although the documents were never made part of the record, he has sought copies of the
documents throughout his post-trial proceedings in hopes of finding some information that could

As for the toxicology report, the record contains no toxicology report.  The state habeas court observed that Gonzalez had failed to assert how his attorney should have used the toxicology report.  That finding though is somewhat understated because Gonzalez asserted in his state habeas petition that he was given a test "to determine the alcohol level in his bloodstream" on the night he was taken to jail.  He argued that if the toxicology report had been introduced into evidence, the jury could have considered that he had acted in a reckless manner.  Although he does not advance a specific argument in his federal petition, it is clear that Gonzalez knew that documentary evidence might have existed that showed he had been drinking prior to the shooting—because he contends he had been drinking—and that documentary evidence might have existed that could have been used to show he acted recklessly—because he knew that a test was conducted.  Thus, obtaining a copy of the purported report would have only substantiated what he already know—that he had been drinking prior to the shooting—rather than reveal something exculpatory that only the prosecutor knew.  "The State has no obligation to point the defense toward potentially exculpatory evidence when that evidence is either in the possession of the defendant or can be discovered by exercising due diligence.  Nor is the State obligated under *Brady* to disclose evidence that is available from other sources."[25]  Gonzalez failed to show that the prosecutor withheld information that he did not already have.

As for the application for probation, Gonzalez had that document as well.  The

---

exonerate him.  He is frustrated because he has been unable to obtain the documents.  Gonzalez complains at length that the prosecutor choose to use only Meledez's statement to police for trial although the police report included statements by five other individuals; however, Gonzalez's attorney used the statement to impeach Meledez.

[25]*Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997).

application bears his signature.  As with the toxicology report, Gonzalez failed to show that the prosecutor withheld information that he did not already have.  Consequently, Gonzalez is not entitled to habeas relief on the basis of the prosecutor's failure to disclose exculpatory information.

**Evidentiary complaints relating to punishment**.  Gonzalez also complains that his presentence investigation report was not introduced into evidence.  Gonzalez maintains that he was denied a fair trial because the jury did not have evidence indicating that he had no prior criminal record and thus was eligible for probation.  Gonzalez, however, did not exhaust this claim because he did not raise the claim in state court.  Instead, he complained in his state habeas petition that his motion for probation was not included in the jury charge and that his attorney was ineffective for failing to offer the report into evidence during the punishment phase of his trial.  As a result, I will not review this claim.

### Gonzalez's Jury Charge Complaints

The jury charge included an instruction for murder, but it did not include an instruction for a lesser-included offense.  Gonzalez maintains that the jury should have been instructed on lesser-included offenses requiring a less culpable mental state.  Gonzalez asserts that he was entitled to instructions on lesser-included offenses because his weapon discharged accidentally when Meledez grabbed his arm and pushed it down—he maintains he did not intentionally discharge the gun.

A "'defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the

13

greater . . . .'"[26]  The state court of appeals determined that Gonzalez was not entitled to

instructions on involuntary manslaughter and criminally negligent homicide because no evidence

existed indicating that Gonzalez did not intend Alex's death or know that death was reasonably

certain to occur.  The court of appeals determined that the evidence showed that Gonzalez

intentionally pointed a loaded gun at Alex, knowing the potential risk involved.  The court of

appeals reasoned that no evidence existed that would permit a jury to rationally find that

Gonzalez was guilty of the lesser-included offenses because he demonstrated an awareness of a

risk and choose to disregard that risk.

       The record supports the state court of appeals' determination.  Gonzalez maintains that he

was entitled to the instructions because he did not intend to shoot Alex—he maintains that he

pointed the gun at Alex to scare him and that the gun accidentally discharged because Meledez

hit his arm.  If evidence had been presented that suggested an accidental shooting, Gonzalez

would have been entitled to an instruction on a lesser-included offense.  The record, however,

does not contain such evidence.  The testimony of three eye-witnesses indicated that Gonzalez

acted intentionally.  Each witness testified that after Meledez pushed Gonzalez's arm down,

Gonzalez pushed Meledez away, raised his arm and discharged his weapon.  Because the

evidence showed that Gonzalez fired the gun after he raised his arm, the evidence indicated that

Gonzalez acted intentionally rather than recklessly or accidentally.  Testimony from the medical

examiner also indicated that Gonzalez acted with intent.  The medical examiner testified that the

bullet entered Alex's body at a horizontal plane.  This evidence supported the eye-witness

testimony that Gonzalez fired the gun after Meledez pushed his arm down and Gonzalez raised

---

[26]*Creel v. Johnso*n, 162 F.3d 385, 389 (5th Cir. 1998) (citation omitted).

his arm back up and fired.  Based on this evidence, a jury could not rationally to find Gonzalez

guilty of a lesser offense and acquit him of murder.  As a result, Gonzalez is not entitled to

habeas relief.

Gonzalez also argues that the punishment charge should have included an instruction on

probation.  Prior to trial, Gonzalez applied for probation.  In his application, he stated the

following: "in the event of his/her conviction in the case and if his/her punishment is accessed

[sic] at a period not exceeding ten (10) years confinement . . . . , he/she be granted probation . . .

."  A prisoner may obtain federal habeas relief only if he "'has been deprived of some right

secured to him . . . by the United States Constitution or the laws of the United States.'"[27]

Gonzalez has not identified a federal authority that requires an instruction on probation. Without

authority for his claim, Gonzalez is not entitled to federal habeas relief.[28]

### Gonzalez's Claim Under the Fifth Amendment

Gonzalez contends that he was harmed when Officer Baucum testified about a statement

he made at the police station.  Officer Baucum testified that after he had completed his police

report, he overheard Gonzalez say, "[m]achismo got the best of me."  Although the legal basis

for this claim is unclear, Gonzalez maintains that introducing the statement violated his *Miranda*

rights and his right to have an attorney present.

---

[27] *Malchi*, 211 F.3d at 957 (citation omitted).

[28] The jury deliberated about Gonzalez's punishment for less than 20 minutes.  In light of the quickness with which the jury reached its punishment decision, it is inconceivable that the jury would have considered probation.

The Fifth Amendment provides for a privilege against self-incrimination[29] and applies to the states through the Fourteenth Amendment.[30]  "In *Miranda v. Arizona*, the [Supreme] Court established certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation."[31]  "The prophylactic *Miranda* warnings are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.'"[32]

About this claim, the state habeas court found as follows:

22.  Officer Bejar testified that he read [Gonzalez] his rights upon arrest [sic] then he was taken to the police station.  Officer Baucum testified that after [Gonzalez] had been questioned by the night detective [Gonzalez] was placed in a waiting area where he made the statement "Machismo got the best of me" which the officer overheard.  Officer Baucum also testified that he was not questioning [Gonzalez] at the time.
23. [Gonzalez] was not being questioned at the time he made the statement.

The state habeas court concluded as follows:  "Because the court finds that [Gonzalez] had been read his Miranda rights prior to his statement 'Machismo got the better of me', the allegation that his statement was involuntary is without merit."  The record supports the state habeas court's determinations.

---

[29]U.S. CONST. amend V ("No person shall be . . . compelled in any criminal case to be a witness against himself. . . .").

[30]*See Malloy v. Hogan*, 371 U.S. 1, 6 (1964) ("We hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States.").

[31]*Duckworth v. Eagan*, 492 U.S. 195, 201 (1989) (internal citation omitted).

[32]*Duckworth*, 492 U.S. at 203 (internal citation omitted).

16

Gonzalez complains that his *Miranda* right was violated, but he does not argue that his privilege against self-incrimination was violated when Officer Baucum testified about what he said at the police station.  Instead, he complains that Officer Baucum could not explain why he wrote a supplemental police report.  Although Gonzalez suggests the prosecutor introduced the supplemental police report into evidence, the report was not admitted into evidence and cross-examination of Baucum indicates the statement was not contained in the supplemental report.  Instead, the record reflects that the prosecutor used a finalized police report to refresh Officer Baucum's recollection of the statement.  Thus, Gonzalez was never compelled to act as a witness against himself.  Instead of acting as a witness against himself, Officer Baucum testified about a statement against interest that Gonzalez made during a time period that he was not subject to police questioning.  Gonzalez has failed to show that the state court's adjudication of his case resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[33]  As a result, he is not entitled to habeas relief based on Officer Baucum's testimony.

Gonzalez also asserts that Officer Baucum's testimony violated his right to have an attorney present, but Gonzalez does not explain why or how.  Out of an abundance of caution, I will briefly address this claim.

"[O]nce a criminal defendant invokes his Sixth Amendment right to counsel, a subsequent waiver of that right—even if voluntary, knowing, and intelligent under traditional

---

[33] 28 U.S.C. § 2254(d).

standards—is presumed invalid if secured pursuant to police-initiated conversation. . . . [S]tatements obtained in violation of that rule may not be admitted as substantive evidence . . . ."[34]  That rule, however, does not apply to nonpolice-initiated conversation.  Here, the record is clear that Officer Baucum did not initiate conversation with Gonzalez.  Instead, Baucum testified that he was not talking with Gonzalez, but that he overheard Gonzalez say, "[m]aschimo got the best of me."  Because Gonzalez was not subject to police-initiated conversation when he made this statement, the statement was admissible subject to the rules of evidence.  Admission of the statement does not entitle Gonzalez to habeas relief.

### Gonzalez's Arguments about the Indictment

In his federal habeas petition, Gonzalez set out several arguments about why the indictment was deficient:  the indictment lacked sufficient information so that he could understand by what authority he was charged, the indictment contained a factual variance between the date of his offense and the date of the presentation of the indictment, and his case was tried in the 226th District Court even though the indictment was brought in 186th District Court.  But Gonzalez complained about something different in his state habeas petition.  In his state habeas petition, Gonzalez argued that the trial court lacked subject matter jurisdiction because the charge did not adhere to several provisions of the Texas constitution.  Because Gonzalez did not raise the arguments in his federal habeas petition in state court, he has failed to exhaust those claims.  As a result, I will not address those arguments.

### Access to the Courts

Gonzalez argues that he was denied access to the courts.  Gonzalez maintains that he sent

---

[34]*Michigan v. Harvey*, 494 U.S. 344, 345 (1990).

a motion for rehearing to the Texas court of criminal appeals after that court denied his petition

for discretionary review.  He complains that he was denied access to the court because the clerk

failed to file his motion.

About this complaint, the state habeas court found as follows:

[Gonzalez] provides documents that he filed a Motion for Rehearing with the Court of Criminal Appeals on 10/27/03.  The court rejected said motion on 10//27/03 for not being in compliance with rule 79.2 of the Rules of Appellate Procedure.  [Gonzalez] then filed a motion for extension of time to file a motion for rehearing which was filed on 11/21/03.  [Gonzalez] was given until December 12/12/03 to file a motion for rehearing.  [Gonzalez] offers documents that a motion for rehearing was delivered and signed for by deputy clerk, Greg Ross, on 12/5/03. [Gonzalez] includes documents that the clerk, Troy Bennett, for the court of criminal appeals finds that no motion for rehearing was delivered or filed.

The state habeas judge concluded, "If the Court of Criminal Appeals concludes that the evidence

provided by [Gonzalez] sustains his assertion that he did in fact file a Motion for Rehearing it is

then recommended that [Gonzalez] receive an out-of-time motion for rehearing on his Petition

for Discretionary Review."  The court of criminal appeals denied Gonzalez's application for state

habeas relief without allowing an out-of-time motion for rehearing.

The record supports the state court's findings, but does not suggest the denial of an

inmate's right to access the courts.  To support his claim, Gonzalez relies on the Supreme

Court's decision in *Bounds v. Smith*.[35]  In *Bounds*, the Court recognized an inmate's

"constitutional right of access to the courts."[36]  This right "requires prison authorities to assist

inmates in the preparation and filing of meaningful legal papers by providing prisoners with

---

[35]430 U.S. 817 (1977).

[36]*Bounds*, 430 U.S. at 821.

adequate law libraries or adequate assistance from persons trained in the law."[37]  To prevail in a

*Bounds* claim, "an inmate alleging denial of access to the courts must demonstrate an actual

injury stemming from defendants' unconstitutional conduct."[38]   To demonstrate an actual injury,

the inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being

impeded."[39]  Here, Gonzalez has not made that showing.

Gonzalez asserts that "irreparable harm was done [to him] in the form of denial of his

[c]onstitutional right of access to the court to re-dress" because "the court of [c]riminal [a]ppeals

may have granted [him] a 'new trial', or may have reversed [his] conviction."  Other than this

assertion, Gonzalez offers nothing to demonstrate an actual injury stemming from the purported

omissions of the clerk of the court of criminal appeals.  Considering the disposition of

Gonzalez's state habeas petition, it is unlikely that the court of criminal appeals would have

reversed his conviction and granted him a new trial.  Had that court determined Gonzalez's

conviction was infirm, it would have granted him habeas relief.  Without showing actual injury,

Gonzalez cannot prevail on his *Bounds* claim and he is not entitled to federal habeas relief.

### Claims about Improper Jury Argument

Gonzalez maintains that the prosecutor engaged in improper closing argument.  He

contends the prosecutor mis-characterized the evidence and interjected his own view of evidence.

In particular, he complains that the prosecutor stated that Gonzalez shot Alex at close range,

---

[37]*Bounds*, 430 U.S. at 828.

[38]*Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (discussing *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996)).

[39]*Lewis v. Casey*, 518 U.S. 343, 353 (1996).

Gonzalez "shot that boy like he was a dog," and Gonzalez was attempting to flee when the police apprehended him at the nightclub.  Gonzalez did not complain about the "shot-that-boy-like-he-was-a-dog" comment in state court, so he is precluded from complaining about that here.

> In federal habeas actions, improper jury argument by the state does not present a claim of constitutional magnitude unless it is so prejudicial that the petitioner's state court trial was rendered fundamentally unfair within the meaning of the Fourteenth Amendment's Due Process Clause.  To establish that a prosecutor's remarks are so inflammatory as to prejudice the substantial rights of a defendant, the petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred.[40]

The state habeas court concluded that Gonzalez was barred from bringing this argument because he failed to raise it on direct appeal.  Although the state habeas court did not explain why the claim was barred, the court's citation to *Ex parte Banks* suggests the court construed Gonzalez's complaint as a claim based on a procedural statute and without constitutional basis.[41]  Gonzalez though does not complain about the violation of a procedural statute, so I will consider this argument in the context of the fourteenth amendment because that is the basis that could possibly entitle Gonzalez to relief.

In his petition, Gonzales asserts that he "was severely harmed by the prejudicial interjections of the personal opinions, and outrageous conduct/supposition of the trier of facts, instead of true facts."  He maintains that absent this, "the outcome of the trial, in all probability would have been different."  These arguments are mere assertions and do not explain how the

---

[40]*Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986).

[41]*See Ex parte Banks*, 769 S.W.2d 539, 541 (Tex. Crim. App. 1989) (declining to review a claim that the trial court violated a procedural statute because the claim lacked constitutional magnitude).

prosecutor's comments over-shadowed the impact of the evidence or denied Gonzalez due process. Instead, Gonzalez complains about the prosecutor's characterizations of the evidence. The prosecutor's closing arguments assert that Gonzalez intentionally shot Alex and that the shooting was not the result of an accidental discharge. While Gonzalez may believe that the prosecutor mis-characterized the evidence, the prosecutor's argument consisted of reasonable deductions from substantial evidence of guilt, responses to defense counsel's argument, and a plea for a guilty verdict. Gonzalez's assertions do not meet his burden of showing that the evidence against him was so insubstantial that but for the prosecutor's remarks no conviction would have occurred. Consequently, Gonzalez is not entitled to habeas relief on this basis.

### Ineffective Assistance of Counsel Claims

Throughout his post-trial proceedings, Gonzalez has maintained that he received ineffective assistance of counsel at trial and on appeal. Of the complaints he raises in this case about the ineffectiveness of his trial attorney, only one claim was exhausted in state court. That claim is Gonzalez's claim that his attorney failed to impeach Meledez. Meledez testified that she walked out of the nightclub with Gonzalez; Gonzalez maintains he walked out of the nightclub with Meledez's sister, Rachel Rivera. Although Gonzalez is unclear about what his attorney should have done, he suggests that this difference is the basis of his claim.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair

trial, a trial whose result is reliable.[42]

About Gonzalez's complaint that his attorney did not impeach Meledez, the state habeas court concluded that "[Gonzalez] failed to prove ineffective assistance of trial counsel for failure to object to Meledez's statement.  The record supports trial counsel's attempts to impeachment [sic] said witness for inconsistent statements.  Strategic choices made by trial counsel are virtually unchallengeable."  The record supports this conclusion.

During cross-examination, Gonzalez's attorney questioned Meledez about whether Rivera was at the nightclub.  Meledez explained that Rivera was not there when she arrived, but Rivera arrived around the time the nightclub closed.  Answering the attorney's questions, Meledez recalled that Rivera spoke with Gonzalez at the nightclub, but she did not know whether Rivera danced with Gonzalez.  The attorney questioned Meledez about whether she walked out of the nightclub with Gonzalez and about Rivera's whereabouts when they walked out.  Meledez responded that she was positive that Rivera was not with Gonzalez when he walked to his car.  Thus, the record shows that Gonzalez's attorney cross-examined Meledez.  An attorney is not deficient if he challenges the testimony of a state witness, attempts to solicit testimony that supports his client's version of the events, and shows inconsistencies with prior a statement to the police.  Gonzalez has not shown that his attorney's performance was deficient.  Without such a showing, Gonzalez is not entitled to habeas relief.

**Appellate counsel**.  About his appellate counsel, Gonzalez raises several exhausted claims about why his appellate attorney was ineffective.  In particular, he complains that his attorney did not file a notice of appeal, she failed to provide him with a copy of the record, and

---

[42]*Strickland v. Washington,* 466 U.S. 668, 687 (1984).

she did not file a motion to supplement his appellate brief.[43]  The state habeas court concluded

that Gonzalez failed "to prove ineffective assistance of counsel" because "[h]e has not shown

that the representation fell below an objective standard of reasonableness and that there is a

reasonable probability the result would be different."  The record supports this conclusion.

Notwithstanding the purported deficiencies in his appellate attorney's performance,

Gonzalez has not shown that he was prejudiced.  Gonzalez was sentenced on November 26,

2001.  He filed notices of appeal on November 27, 2001, December 11, 2001, and December 18,

2001.  His appellate attorney was appointed on November 28, 2001.  By that time, Gonzalez had

already perfected his appeal by filing his first notice of appeal.  The Texas Rules of Appellate

Procedure require only one timely notice of appeal to perfect an appeal.[44]  A subsequent notice of

appeal filed by Gonzalez's attorney would have had no effect.  As result, he was not prejudiced

by any failure on the part of his attorney to file a notice of appeal.

Gonzalez also did not show that he was prejudiced by his attorney's failure to provide

him with a copy of the trial record.  The record indicates that upon Gonzalez's request for a copy

of the record, the court of appeals denied the request and referred Gonzalez to his attorney.

When Gonzalez asked his attorney for a copy, the attorney responded and explained that he did

not need a copy of the record because she represented him.  Dissatisfied with those responses,

Gonzalez sent his daughter to purchase a copy of the record.  But once Gonzalez obtained a copy

---

[43]Gonzalez also complains that his appellate attorney failed to provide him with the six witness statements he contends were part of the police report.  He did not specifically complain about this matter in state court in the context of ineffective assistance of appellate counsel, and thus he failed to exhaust that particular complaint.

[44]*See* TEX. R. APP. P. 26.2 (setting out the deadline for filing a notice of appeal in a criminal case).

of the trial record, he complained that it was incomplete.[45]  The court of appeals assured

Gonzalez that he had everything in the record.  Because he had a copy of the record, Gonzalez

cannot show that he was prejudiced by his attorney's failure to provide him with a copy.  To the

extent that Gonzalez may feel that he was prejudiced by having to pay for a copy of the record,

that fact would not have changed the disposition of his appeal.

Gonzalez further complains that his attorney failed to supplement his appellate brief with

his version of the events that led to Alex's death.  In support of this claim, Gonzalez submitted a

copy of a letter from his attorney regarding this matter.  In the letter, the attorney wrote the

following:

> Although I have tried to explain this to you numerous times, you continue to
> complain that I did not include the "factual facts" you assert.  I have enclosed a
> copy of Rule 38 of the Texas Rules of Appellate Procedure.  As you can see, both
> the Statement of Facts and Argument must be supported by references to the
> record.  Because the record does not contain any of the factual allegations you
> have repeatedly asserted, I cannot bring these claims before the court. . . . If you
> want to write out an affidavit, outlining your version of the events of that night, I
> will draft a motion to supplement the brief to include your affidavit.  Just execute
> the affidavit, and mail it to me.

Notably, the attorney wrote that she would "draft" a motion to supplement the record; the

attorney did not state that she would "file" a motion to supplement.  The record does not indicate

that the attorney filed a motion to supplement the brief, and it does not indicate whether the

attorney drafted a motion.  The record does show that Gonzalez filed a motion to supplement his

---

[45]Gonzalez does not appear to understand what constitutes the trial record.  The trial record includes only those documents and evidence that were before the trial judge.  Throughout his post-trial proceedings, Gonzalez has sought copies of statements from the six witnesses identified on the police report.  To the extent that such statements ever existed in written form, they were never admitted into evidence.  A trial record cannot be properly characterized as incomplete because it does not include documents that were not presented to the trial court or because it does not include documents that were not admitted into evidence.

brief.  The court of appeals denied the request and explained that a Texas criminal defendant is not entitled to hybrid representation.  The court of appeals advised Gonzalez that his attorney had filed a 27-page brief on his behalf and reminded Gonzalez that his attorney "must evaluate the record based on the law; not every mistake in the trial court is grounds for relief on appeal."  The court of appeals also stated that "[w]ith respect to the affidavit [Gonzalez] requested his attorney to file, [the] court may not consider any information or document that was not filed in the record of the trial court."  Gonzalez has cited no authority that requires an appellate court to consider factual assertions that are not contained in the trial record.  The factual assertions that Gonzalez wanted the court of appeals to consider—that he knew Meledez and Rivera to be prostitutes; he left the nightclub with Rivera; Meledez asked him for a ride and he declined; the teenagers came at him with knives; he intended to fire a warning shot; Meledez pushed him backwards causing the gun to fire accidentally; and he was in his rights to protect himself—are not in the trial record.  Regardless of whether Gonzalez's attorney was deficient in telling Gonzalez that she would draft a motion to supplement the brief, she was correct in not filing such a motion.  The law in Texas is quite clear that the court of appeals is not permitted to consider matters outside the trial record.[46]  As a result, the court of appeals would not have considered Gonzalez's factual assertions even if the attorney had drafted and filed a motion.  Because the court of appeals would not have considered factual assertions outside the trial record, Gonzalez cannot show that

---

[46]*See Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004) ("An appellate court may not consider factual assertions that are outside the record, and a party cannot circumvent this prohibition by submitting an affidavit for the first time on appeal.  While the record may be supplemented under the appellate rules if something has been omitted, the supplementation rules cannot be used to create new evidence.  Moreover, an appellate court's review of the record itself is generally limited to the evidence before the trial court at the time of the trial court's ruling.").

he was prejudiced by his attorney's failure to file a motion to supplement his brief.  Without a showing of prejudice, Gonzalez is not entitled to habeas relief on grounds that his appellate attorney was ineffective.

### Conclusion

After liberally construing Gonzalez's claims, I conclude that Gonzalez has not shown that the state court's adjudication of his case resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[47]  Consequently, I DENY Gonzalez's petition for federal habeas relief (docket entry #2).

**SIGNED** on October 30, 2006.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[47]28 U.S.C. § 2254(d).

27